IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | CRIMINAL ACTION NO. |
| vs. | : | 1:08-CR-0209-CC-JSA-1 |
| MAURICE JENKINS, | : | |
| Defendant. | : | |

**OPINION AND ORDER**

This matter is before the Court on Defendant Maurice Jenkins's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (the "Motion to Reduce Sentence") [Doc. 161] and the Government's Opposition to Defendant's Motion for Compassionate Release [Doc. 164]. After carefully reviewing the parties' filings, the record in this case, and the applicable law, the Court hereby **DENIES** the Motion to Reduce Sentence.

**I.  BACKGROUND**

   A.  Facts

On January 17, 2008, Defendant Maurice Jenkins ("Defendant" or "Jenkins"), co-defendant Marcus Sims, a/k/a "Lil Boo," and a third person, known as "Weazy," were at the Greenbriar Mall in Atlanta, Georgia, with the intent to burglarize cars, when they saw a UPS delivery truck parked in front of the mall with packages stacked

behind the truck. (PSR ¶ 14.) Jenkins and Sims stopped their car next to the UPS truck and started to take packages from the stack when the UPS driver saw them and confronted them. (Id.) As the defendants were getting into their vehicle, a security guard aided the UPS driver by pulling the defendants' driver side door open and attempting to pull Jenkins out of the vehicle. (Id.) Jenkins pulled out a handgun and shot the security guard six times before driving away. (Id.) The security guard was shot three times in the stomach, once in the back, and twice in one thigh. (Id. ¶ 21.)

On January 22, 2008, five days following the shooting, Atlanta police officers stopped Jenkins for a traffic violation. (Id. ¶ 15.) Jenkins provided the officers with his driver's license, and while an officer was checking his license, he sped away. (Id.) A short time later, police found Jenkins's abandoned car and found that he had left three firearms in it: (1) a Romarm/Cugir, Model SAR-I 7.62 x 39mm semi-automatic rifle; (2) a Beretta, Model 96, .40 caliber pistol; and (3) a Mossberg model 5OOA, 12-gauge shotgun. (Id.)

The shooting victim from the Greenbriar Mall positively identified Jenkins in a photograph line-up as the gunman who shot him. (Id. ¶ 16.) On February 13, Jenkins turned himself into the police and agreed to be interviewed. (Id. ¶ 17.) He said that he was at the Greenbriar Mall on January 17, 2008, to break into cars and steal property. (Id.) He admitted that during the robbery he shot a security guard and the gun he used was a Smith & Wesson .40 caliber pistol. (Id.)

B.   Procedural History

On May 28, 2008, a federal grand jury sitting in the Northern District of Georgia returned a seven-count indictment charging Jenkins and Sims with the following offenses:

- Count One — Hobbs Act robbery, on January 17, 2008, in violation of 18 U.S.C. § 1951;

- Count Two — Brandishing and discharging a firearm during the robbery in violation of 18 U.S.C. § 924(c);

- Count Three — Possession of a firearm by a convicted felon, on January 17, 2008, in violation of 18 U.S.C. § 922(g)(1);

- Count Four — Possession of a stolen firearm, on January 17, 2008, in violation of 18 U.S.C. § 922(j);

- Count Five — Possession of multiple firearms by a convicted felon, on January 22, 2008, in violation of 18 U.S.C. § 922(g)(1) (Jenkins only);

- Count Six — Possession of multiple stolen firearms, in violation of 18 U.S.C. § 922(g)(1) (Jenkins only); and

- Count Seven — Possession of a stolen firearm, on May 9, 2008, in violation of 18 U.S.C. § 922(g)(1) (Sims only).

On January 27, 2009, Jenkins entered a plea of guilty as to counts one, two, three, and five of the indictment pursuant to a negotiated plea agreement.  (Doc. Nos. 54, 55).

On May 6, 2009, the Court held a sentencing hearing. (Doc. No. 81.) The Court calculated Jenkins's criminal history to fall within category III. (Doc. No. 84 at 3.) A four-level reduction under U.S.S.G. 5K1.1 and acceptance of responsibility dropped the total offense level from 34 to 30, which changed the guideline range from 188-235 months to 121-151 months. (Id. at 21.) After adding the consecutive 120-month mandatory minimum term of imprisonment for count two (discharge of a firearm during a crime of violence, 18 U.S.C. § 924(c)), the low-end range came down to 241 months' imprisonment. (Id.) The Court sentenced Jenkins to 241 months' imprisonment to be followed by five years of supervised release. (Id. at 23.)

On November 16, 2009, a jury trial commenced for co-defendant Sims. (Doc. No. 98.) Jenkins testified against Sims as a government witness. The jury convicted Sims on all counts. (Doc. No. 102.) The government later filed a motion for further reduction of Jenkins's sentence under Federal Rule of Criminal Procedure 35. (Doc. No. 104.) The government asked for 24-month (10%) reduction of Jenkins's 241-month sentence. (Id.) The Court granted the government's motion and reduced Jenkins's sentence to 217 months' imprisonment. (Doc. No. 106.) Jenkins has an anticipated release date of April 13, 2024. (See https://www.bop.gov/inmateloc/).

## II. DISCUSSION

Ordinarily, district courts "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). "The authority of a district court to modify an

4

imprisonment sentence is narrowly limited by statute." United States v. Phillips, 597 F.3d 1190, 1194–95 (11th Cir. 2010). Specifically, 18 U.S.C. § 3582(c), as amended by the First Step Act of 2018, sets forth the limited circumstances in which a district court may reduce or otherwise modify a term of imprisonment after it has been imposed. Section 3582(c)(1)(A) states:

> (c) **Modification of an imposed term of imprisonment.—** The court may not modify a term of imprisonment once it has been imposed except that— (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction....
>
> ....
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A)(i).

> In order to grant Jenkins's request pursuant to § 3582(c)(1)(A), the Court must:
>
> (1) find that defendant has exhausted his administrative remedies with the BOP; (2) weigh the relevant § 3553(a) factors; (3) conclude that extraordinary and compelling reasons warrant compassionate

>release in this case; and (4) determine that defendant is not a danger to the community.

18 U.S.C. § 3582(c)(1)(A); U.S. Sent'g Guidelines Manual § 1B1.13(2). Moreover, Jenkins bears the burden of establishing that compassionate release is warranted. See United States v. Hamilton, 715 F.3d 328, 337 (11th Cir. 2013). Even where a defendant satisfies this burden, "the district court still retains discretion to determine whether a sentence reduction is warranted." Id.

### A.    Exhaustion of Administrative Remedies

In this case, the Court first finds that Jenkins has exhausted his administrative remedies with the BOP. In this regard, Jenkins filed an administrate request for compassionate release, which was denied, and Jenkins waited over 60 days before filing his Motion to Reduce Sentence. Hence, Jenkins has exhausted his administrative remedies. 18 U.S.C. § 3582(c)(1)(A). The Court thus proceeds to address the merits of the Motion to Reduce Sentence.

### B.    Extraordinary and Compelling Reasons

The Court considers whether extraordinary and compelling reasons warrant compassionate release in this case. The Sentencing Commission has set forth examples of qualifying "extraordinary and compelling reasons" for compassionate release, including, for example: (1) terminal illness; (2) a serious medical condition that substantially diminishes the ability of the defendant to provide self-care in prison; or (3) the death of the caregiver of the defendant's minor children. USSG §

1B1.13, comment. (n.1). "The age of the defendant may constitute an extraordinary and compelling reason for a sentence reduction if he is at least 65 years old, has served at least the lesser of 10 years or 75 percent of his sentence, and 'is experiencing a serious deterioration in physical or mental health because of the aging process.'" United States v. Bueno-Sierra, No. 20-12017, 2021 WL 91353 (11th Cir. Mar. 10, 2021) (quoting U.S.S.G. § 1B1.13, comment. (n.1(B))).  A fourth catch-all category provides: "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with," the aforementioned three categories. USSG § 1B1.13, comment. (n.1(D)).

The mere existence of the COVID-19 pandemic "cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." United States v, Raia, 954 F.3d 594, 597 (3d Cir. 2020). "[C]ourts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." United States v. Feiling, No. 3:19CR112 (DJN), 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020).

In this case, Jenkins, who is 31 years of age, has not met his burden of demonstrating that there is an extraordinary and compelling reason that warrants

compassionate release. Jenkins states in his motion that he is obese and suffers from asthma and high blood pressure.[1] He maintains that these conditions put him at an increased risk of developing a severe illness from COVID-19. The BOP's denial of Jenkins's administrative request for compassionate release confirms that Jenkins has a BMI of 31. However, there is nothing in the record confirming that Jenkins has asthma or high blood pressure. This is significant because it is Jenkins who bears the burden of demonstrating his entitlement to a sentence reduction with the requisite factual support. See United States v. Freeman, CR 406-336, 2020 WL 2449345, at *1-2 (S.D. Ga. May 12, 2020) (finding no extraordinary and compelling circumstances where defendant had diabetes, asthma, high blood pressure and is on a C-PAP breathing machine but "provide[d] no medical evidence to support his alleged serious medical conditions or the impact that COVID-19 would have upon him individually" and stating that "generalized concern about possible exposure is at this point too speculative to qualify as extraordinary and compelling").

Assuming Jenkins does suffer from obesity, asthma, and high blood pressure, these conditions do not establish an extraordinary and compelling reason warranting a sentence reduction, even with the existence of the COVID-19 pandemic. While the

---

[1] There is some indication that Jenkins may have a history of smoking. However, his motion refers to someone by another name – "Prior to his incarceration, Mr. Grant was a heavy smoker for several years." (Doc. No. 161 at 5.) There are no documents in the record confirming that Jenkins has a history of smoking.

CDC has advised that obesity increases the risk of severe illness from COVID-19 and that asthma and high blood pressure might increase the risk of severe infection, these conditions are not extraordinary. United States v. Coleman, Case No. 6:11-cr-247-Orl-28KRS, 2020 WL 5912333, at *3 (M.D. Fla. Oct. 6, 2020) ("The CDC advises that obesity puts one at an increased risk of severe illness from Covid-19 and asthma and hypertension might increase one's risks. However, these conditions are not extraordinary."); see also United States v. Holt, Case No.: 3:07-cr-211-VMC-MCR, 2021 WL 848156, at *2 (M.D. Fla. March 5, 2021) (finding no extraordinary and compelling circumstances with respect to inmate who had asthma, allergies, obesity, high cholesterol, hypertension, Type II diabetes, sleep apnea, and degenerative discs); United States v. Higginbotham, No. 3:12-cr-125-J-34JRK, 2020 WL 6393836, at *1 (M.D. Fla. Nov. 2, 2020) (denying compassionate release to an inmate suffering from obesity and asthma, and finding that these conditions do not qualify as extraordinary conditions); United States v. Lockley, Case No. 1:17-cr-00127-MHC-JKL, Doc. No. 190 (N.D. Ga. Oct. 5, 2020) (finding no extraordinary and compelling reason for a 26-year-old African American man who presented with obesity and hypertension); United States v. D'Angelo Battis, No. 8:15-cr-429-T-02AAS, 2020 WL 5094844, at *1 (M.D. Fla. Aug. 28, 2020) ("Both hypertension and obesity, if treatable or controlled, have been found insufficient to justify compassionate release because neither is an extraordinary and compelling reason as required by 18 U.S.C. § 3582(c)(1)(A) and the United States

Sentencing Commission's policy statement in U.S.S.G. § 1B1.13"); <u>United States v. Hayes</u>, No. 3:18-cr-37-J-34JBT, 2020 WL 3611485, at *2 (M.D. Fla. July 2, 2020) (holding obesity and hypertension "alone or in combination with Covid-19" are not extraordinary). Jenkins has not presented any information regarding the severity of his medical conditions and he has not demonstrated that the conditions are not being properly attended to by the BOP. Under these circumstances, the Court cannot find that Jenkins has met his burden of showing extraordinary and compelling reasons justifying compassionate release.

    C.    <u>Threat to Community and § 3553(a) Sentencing Factors</u>

Even if Jenkins could demonstrate extraordinary and compelling reasons for compassionate release, the Court is not satisfied that Jenkins is not a danger to the safety of any other person or to the community and the sentencing factors under 18 U.S.C. § 3553(a) do not favor granting a sentence reduction. To qualify for compassionate release, the inmate must prove that he "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Further, under § 3553(a), a district court's sentence must be sufficient, but not greater than necessary, to achieve the goals of sentencing, which are the following: (1) reflecting the seriousness of the offense, (2) promoting respect for the law, (3) providing just punishment, (4) deterring future criminal conduct, (5) protecting the public, and (6) providing the defendant with any needed training or treatment. 18

U.S.C. § 3553(a). The district court must consider the nature and circumstances of the offense, the defendant's history and characteristics, the kinds of sentences available, the Sentencing Guidelines, any pertinent policy statement, the need to avoid disparate sentences for defendants with similar records, and the need to provide restitution to any victims. Id. The weight given to any of the § 3553(a) factors is committed to the district court's sound discretion. United States v. Croteau, 819 F.3d 1293, 1309 (11th Cir. 2016).

Jenkins's offense conduct was particularly violent, as he used a stolen gun to shoot a security guard six times. When he committed this offense, he already was a convicted felon on probation who was prohibited from possessing firearms. This is indicative of Jenkins's recidivism. See United States v. Allen, No. 3:15-cr-00139, 2020 WL 5573820, at *18 (M.D. Tenn. Sep. 17, 2020) ("[D]ue to his prior felony, Defendant was prohibited from possessing firearms, yet did anyway, evidencing his recidivism."); United States v. Reed, No. RDB-07-0470, 2020 WL 4732127, at *2 (D. Md. Aug. 14, 2020) ("[P]ossession of a firearm by a prohibited person, is in itself a serious crime and is indicative of [Defendant's] recidivism.").

Moreover, the serious and violent nature of Jenkins's offense conduct warrants the sentence that the Court imposed. Notably, Jenkins's co-defendant, who did not shoot anyone but who took his case to trial, is serving 360 months' imprisonment, whereas the Court sentenced Jenkins, who accepted responsibility and cooperated, to

11

only 217 months' imprisonment.  The difference in their sentences was warranted, but the Court is of the opinion that Jenkins needs to serve the entirety of his sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, and to deter future criminal conduct.

The Court likewise observes from the record that, while Jenkins has made a diligent and successful effort to better himself through education and training programs, he has been sanctioned twelve times while incarcerated.  His disciplinary record includes charges for tattooing himself, assault (twice), possessing alcohol, phone abuse, possessing gambling paraphernalia, possessing a non-hazardous tool, fighting (twice), possessing a cellphone, contacting the public without authorization, and being absence from assignment.  Significantly, Jenkins has not had any disciplinary reports since 2014, but this disciplinary record remains relevant to Jenkins's history and characteristics.  In sum, the Court finds that the Section 3553(a) factors do not weigh in favor of granting Jenkins compassionate release.

### III.  CONCLUSION

Based on the foregoing, the Court **DENIES** Defendant Maurice Jenkins's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [Doc. 161].

SO ORDERED this 8th day of April, 2021.

*s/ CLARENCE COOPER*
CLARENCE COOPER
SENIOR UNITED STATES DISTRICT JUDGE
